[L. A. No. 1110.    In Bank.—May 18, 1904.]

## FAR WEST OIL COMPANY, Appellant, v. WITMER BROTHERS COMPANY, Respondent.

OIL LEASE—CONSTRUCTION OF CONTRACT.—In construing an oil lease the contract must be considered as a whole, and regard must be had to the situation of the parties, the surrounding circumstances, and the object to be accomplished, in order to arrive at the intention of the parties.

ID.—DIVISION OF NET PROCEEDS—LOSS ON UNPRODUCTIVE WELL.—Where the oil lease provided that the lessee should furnish all machinery, tools, and materials, and pay one half of the cost of pumping oil from productive wells, and half the cost of drilling and casing unproductive wells, and that the lessor should pay one half of the cost of drilling, casing, and pumping all wells sunk one thousand feet deep which did not produce fifteen barrels a day for the first thirty days, and that the net proceeds of oil over the cost of pumping should be equally divided, the lessor must pay one half of the entire loss upon an unproductive well, including one half of its entire cost from the time when the first work was begun on the ground until the machinery was removed, and one half of the expense of removal, and one half of the reasonable value of the use of machinery, tools, and materials belonging to the lessee which were used in the work.

ID.—INDEPENDENT COVENANT—EQUAL DIVISION OF LOSS—CONDUCT OF PARTIES.—The clause for division of the cost of unproductive wells is an independent covenant intended to cover the loss incurred on account of them, primarily suffered by the lessee, and to divide

it equally between the parties interested. This conclusion is confirmed by the conduct and declarations of the parties during and immediately after the transaction showing that the clause was understood in this way.

ID.—COST OF PUMPING PRODUCING WELLS—IMPORT OF AGREEMENT—DIVISION OF EXPENSES REASONABLY INCURRED.—Where a clause in the lease provided that the lessee should pay one half of the cost of pumping oil from producing wells, and that the lessor, if dissatisfied, might assume the pumping at a less sum than that charged by the lessee, one half of which would be paid by the lessee, the provision imports that in the absence of an agreed price one half of the actual expenses reasonably and prudently incurred should be paid by the other party, including the cost of cleaning out the wells when they became clogged, and all other unavoidable expenses necessary to do the required pumping, not arising from fault or neglect of the party doing the work.

ID.—INADMISSIBLE EVIDENCE.—Evidence was improperly received to show what was the usual charge for pumping oil by those engaged in that business, in order to reduce the amount of actual expense and outlay reasonably incurred by the plaintiff in doing the work.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

Lee & Scott, for Appellant.

J. S. Chapman, and P. W. Dooner, for Respondent.

SHAW, J.—This is an appeal from an order denying plaintiff's motion for a new trial. Both parties to the action are corporations. The defendant was the owner of certain lots in the city of Los Angeles that were supposed to contain petroleum, and plaintiff was engaged in boring and operating oil-wells. On February 19, 1895, the defendant leased the said lots to plaintiff for the term of ten years, and the plaintiff agreed to bore wells thereon and operate them for the production of oil.

The complaint contains four counts, the first of which was upon an alleged account stated for the amount claimed to be due plaintiff from defendant for the expense of drilling and casing an unproductive well, and for the pumping of the productive wells on the lots leased. The court found that it was not true that the account was stated, as alleged in the

first count of the complaint, and this finding is claimed to be contrary to the evidence.

We think the court was correct in its construction of the evidence upon this point. The opinion of the learned judge who tried the case, contained in respondent's brief, clearly and correctly states the case in the following language: "There were insistent efforts on the part of the plaintiff to obtain such concessions and agreement as would amount to an account stated, all of which seems to have been avoided by the defendant, and the fact appears to be that at no time was there ever an agreement that any fixed sum was due or to become due, except upon contingencies which involved the sinking of further wells and the deepening of existing wells and other matters, so that whatever rights plaintiff has in the matter, in my opinion, must be worked out through the agreement between the parties."

The second and third counts of the complaint were upon certain agreements alleged to have been made whereby the defendant had agreed, upon certain conditions, to pay a certain sum of money in full of plaintiff's claim for the same matters mentioned in the first count of the complaint. The court found that these agreements were never made, and it is not seriously claimed that this finding is contrary to the evidence. We think the evidence fully sustains the finding of the court.

By the terms of the lease, the plaintiff agreed that within thirty days from its date it would begin operations by erecting on the premises all the necessary machinery and tools, and would immediately thereafter proceed to "bore, drill, or sink" wells thereon for the purpose of obtaining oil, and that after the completion of the well or wells it would "operate and pump all wells producing over one barrel a day in such manner as would take out the greatest amount of oil possible." The lessee was to pay one half of the cost of pumping the oil from productive wells and one half of the cost of drilling and casing the wells that proved unproductive. The net proceeds of the oil, over the cost of pumping, was to be equally divided.

The fourth count of the complaint alleged that in pursuance of the lease the plaintiff sunk upon the premises four wells, three of which proved to be productive and one unpro-

ductive; that the cost of drilling and casing the unproductive well was $2,864.60; that the productive wells were pumped by the plaintiff from the time of completion up to April 6, 1896, at a cost of $3,746.76, making an aggregate of $6,611.36, one half of which, or $3,305.68, would, under the lease, be due from the defendant to the plaintiff; that the defendant had paid thereon the sum of $728.27, leaving a balance of $2,577.41, for which amount judgment is asked. By some error in the figures, the prayer is for a small amount in excess of this sum, but the mistake is not material to the consideration of the case.

The court found that the plaintiff was entitled to $690 as the total cost of pumping the productive wells, and $1,922.34 as the total cost of drilling the unproductive well, and that it was not entitled to make any charge for casing the unproductive well because of the fact that when it was discovered to be unproductive, plaintiff drew the casing from the well and kept it for its own use. Judgment was therefore given for $577.90, being one half of the above amounts less $728.27 paid on account.

In making this reduction of the amount claimed in the accounts rendered by the plaintiff the court below disallowed all the items for the use of the machinery, casing, and lumber necessary to carry on the operation of drilling the well, and also all charges for all supplies and repairs required, it being of the opinion that these items were not properly included in the cost of drilling and casing the well, under that clause of the lease providing that the lessor should pay one half of the cost thereof. The court apparently considered that the only thing the lessor could be charged with under that clause was the cost incurred in the actual operation of the drill in the well. With respect to the cost of pumping the productive wells, the court during the trial stated its opinion thus: "I think the true test would have been what could you have gotten somebody else to have come there and pumped those three wells [for] at that time," and accordingly all items for time occupied in cleaning out the wells when, during the operation of pumping oil therefrom, they became clogged with sand so that cleaning was necessary to do effective pumping, appear to have been rejected. Evidence was taken to show what would have been the usual charge for the pump-

ing by those engaged in that business, and the court allowed the sum of thirty dollars per month for twenty-three months as the reasonable cost thereof, irrespective of the outlay made by the plaintiff in that work or the rental value of the machinery used for that purpose. For the drilling of the unproductive well the court, according to counsel for respondent, allowed only the cost of the labor while the drill was going, and the cost of pumping water, sand, and oil from the well for several months during the drilling operations.

This was too narrow a construction of the provisions of the lease on these two points.

The provision regarding the cost of drilling and casing was as follows:—

"In the execution of said work of boring or drilling for oil, gas, etc., the lessee shall furnish and provide, at its own cost, charge, and expense, all derricks, pumps, pipes, engine, tanks, and materials of whatsoever kind that may be necessary to properly carry on the work by it undertaken, and all labor employed in the development and production, including all labor and material in erecting and maintaining fixtures for use in and about said work.

"The lessor agrees to pay one half of the cost of drilling, casing, and pumping all wells drilled to a depth of at least one thousand feet which do not produce an average of at least fifteen barrels of oil per day for the first thirty days in which said well shall have been pumped."

The contract must be considered as a whole, and regard must be had to the situation of the parties, the surrounding circumstances, and the object to be accomplished, in order to arrive at the intention of the parties. Neither party could receive any benefit from an unproductive well. The lessee must, in the first instance, incur all the expense of constructing it. Before it could be known that a well was unproductive it would be necessary for the lessee to drill it, case it, and, if oil were found, to pump it for thirty days to see if it would produce the fifteen barrels a day. If no provision for its benefit was made in the lease, it would suffer the loss thereby occasioned, which would include all the expense incurred by it in drilling the well and getting it ready to be pumped. As the net proceeds of productive wells were to be equally divided, it would be but reasonable and natural to divide also

the loss on unproductive wells. Accordingly the clause was inserted that the lessor should pay one half of the cost of drilling, casing, and pumping such wells as should prove unproductive. The word "drilling" in the second clause is obviously used in a general sense, referring to the same word in the first clause, and includes everything referred to in the first clause as necessary for that work. The first clause does not specifically mention casing. Therefore, it was particularly mentioned in the second clause, as also was the pumping, in order to make it clear that the lessor was to bear one half of the entire loss from such wells, including the expense of pumping and casing them, as well as the cost of the things mentioned in the first clause as necessary to the work of drilling.

The defendant was properly chargeable with one half of the expense of all the preliminary work of preparing the ground, erecting the derrick, placing and connecting the engine and drilling rig, digging the slump-hole, and, indeed, the entire cost of the well from the time the first work was begun on the ground until the machinery was removed when it was abandoned, including the expense of removal. No good reason appears why the defendant should not also be charged with one half of the reasonable value of the use of the machinery, tools, lumber, and casing used by the plaintiff in the work. It seems that the plaintiff was the owner of the machinery and tools, and that it purchased the lumber and casing, and that after the enterprise was concluded it retained this property as its own. If the plaintiff had hired the use of the same, the cost of hiring would be a legitimate part of the cost of drilling the well. The rule cannot be different because of the fact that it was the owner of the machinery and tools. In contemplation of law, it would have been able to hire them to others, or use them itself at other work, and thus would have received the value of such use, if it had not devoted them to use in this enterprise. For the use of the machinery, tools, and materials which it was to furnish at its own expense for the drilling of the productive wells it was to receive as compensation one half of the net proceeds of the oil. The clause respecting the unproductive wells is an independent covenant, intended to cover the loss incurred on account of them, primarily suffered by the lessee,

and divide it equally between the parties interested. This conclusion is confirmed by the conduct and declarations of the parties during and immediately after the transaction, showing that the clause was understood in this way. On December 7, 1895, the plaintiff rendered to the defendant a bill for the cost of the unproductive well, which included charges for the use of the engine, boiler, casing, and lumber, amounting to nearly seven hundred dollars, the entire bill against the defendant on account of that well at that date being $1,432.30. The defendant made no objection whatever to these items, but in its response claimed a small deduction on account of certain items of labor, and offered to pay the remainder, including the items now objected to, for which it now claims it was not liable under the lease. Evidently at that time the defendant understood that it was responsible under the contract for the use of the machinery, tools, lumber, and casing. There is no evidence that it ever objected to these charges until the suit was begun.

The clause concerning payment of one half of the cost of pumping the productive wells is as follows: "The lessee agrees to pay one half of the cost of pumping oil after producing wells have been struck and are ready for pumping; and if not satisfied with the charge made by said lessee for said pumping, the lessor may itself assume the pumping of productive wells, provided it agrees to do so at a less sum than charged by the lessee; one half of such cost the lessee agrees to pay to said lessor."

The parties were jointly interested in this part of the work, each receiving one half of the net proceeds. The language of this provision means that if either party undertook to do the work of pumping, and no price was agreed upon, one half of the expenses reasonably and prudently incurred should be paid by the other party. The lessee was required, as above stated, to operate and pump all wells so as to take out the greatest amount of oil possible. The measure of its right against the defendant was manifestly one half of the actual cost reasonably incurred in pumping the wells. This would necessarily include the cost of cleaning out the wells when they became clogged and all other unavoidable expense, not arising from plaintiff's fault or neglect, and necessary to enable it to do the required pumping. The amount of this

expense cannot be reduced by showing that others might have been willing to do the same work for a less sum, or that the usual price of such work was not so much as the actual cost. The plaintiff was held to reasonable care and diligence to avoid unnecessary expense, but, having exercised that care and diligence, it is entitled to charge defendant with one half the cost actually incurred.

For these reasons we think the court erred in its findings as to the amount for which the defendant was liable.

The order is reversed and the cause remanded for a new trial.

Angellotti, J., Van Dyke, J., McFarland, J., and Lorigan, J., concurred.

Rehearing denied.